FOREIGN SERVICE GRIEVANCE BOARD
SUITE 3100, SA-15
WASHINGTON, D.C. 20522-1531
Phone: (703) 875-5175
Fax: (703) 875-5177

May 18, 2006

SUBJECT:   Appeal of Matthew J. McGrath
           FSGB No. 2004-070
           **DECISION**

Received

MAY 2 2 2006

By The Office Of
Kalijarvi, Chuzi, & Newman, PC

The Board has issued this **DECISION** in response to the subject appeal.

I certify that a true and correct copy of the Board's **DECISION** is being sent to:

   Michelle L. Perry, Esq.
   Joanne M. Lishman, HR/G
   Sharon Papp, AFSA

on this eighteenth day of May 2006.

Janet M. McGhee
Acting Executive Secretary

Attachment:
    As Stated.


cc: Panel: Shapiro, Hartman, Horoschak

BEFORE THE FOREIGN SERVICE GRIEVANCE BOARD

In the Matter Between

| | |
|---|---|
| Matthew J. McGrath<br>Grievant | Record of Proceedings<br>FSGB No. 2004-070 |
| And | Date: May 18, 2005 |
| Department of State | **DECISION** |

For the Foreign Service Grievance Board:

| | |
|---|---|
| Presiding Member: | Barry E. Shapiro |
| Board Members: | Lois E. Hartman<br>Theodore Horoschak |
| Special Assistant: | Joseph Pastic |

| | |
|---|---|
| Representative for the Grievant: | Michelle L. Perry, Esq. |
| Representative for the Department: | Joanne M. Lishman<br>Director<br>Grievance Staff |
| Employee Exclusive Representative: | American Foreign Service Association |

## CASE SUMMARY

**HELD:** The Board lacks the authority to grant a stay that would preclude a Selection Board from reviewing an EER challenged before the EEOC.

## OVERVIEW

Grievant, designated for separation by the 2003 Performance Standards Board (PSB), appealed the agency's denial of his grievance wherein he had asserted that it had committed procedural error by permitting both the 2003 Selection Board (SB) and the 2003 PSB to review his 2001-2002 Employee Evaluation Report (EER) which was then under challenge in an Equal Employment Opportunity Commission (EEOC) proceeding.

Grievant explicitly acknowledged that the EEOC is without authority to prohibit the agency from including the EER in the performance file, but other than citing the harm he will suffer, he offered no statutory grounds for this Board to order such a prohibition -- in effect, to impose a stay.

The Board held that unless a particular law, rule, published policy, or provision of a collective bargaining agreement (CBA) indicates otherwise, the filing of a grievance with an agency does not operate to prevent the agency from completing its action on the matter at issue, or from taking such further actions as may be contingent on that initial action.

The Board denied the grievant's appeal.

# DECISION

## I. THE GRIEVANCE

The 2003 Performance Standards Board (PSB) designated Matthew J. McGrath (grievant), a Public Diplomacy Officer with the Department of State (Department, agency), for separation. On December 20, 2004, grievant appealed to this Board the agency's denial of his grievance wherein he asserted it had committed procedural error when it permitted both the 2003 Selection Board (SB) and the 2003 PSB to review his 2001-2002 Employee Evaluation Report (EER), which was then under challenge in an Equal Employment Opportunity Commission (EEOC) case.[1]

For a remedy, grievant requests reinstatement with back pay, expungement of the agency-level grievance decision and all related documentation, and reimbursement of attorneys' fees incurred.

## II. BACKGROUND

On April 21, 2004, McGrath was notified that he had been designated for separation based on relative performance by the 2003 PSB. He filed an agency-level grievance on November 17, 2004, asserting procedural error by the Department. The agency decision dated November 22 denied the grievance in its entirety; McGrath was separated on November 30. He appealed to this Board on December 20, 2004.

In acknowledging McGrath's appeal, the Board took note of the Department's jurisdictional challenge and asked the parties to submit their positions on this issue. In its March 10, 2005 "Order: Jurisdiction," the Board found that grievant had presented a

---

[1] In its decision dated May 19, 2005, the EEOC ruled in the Department's favor. On or about October 10, 2005, grievant filed a complaint with the Federal District Court regarding the EEO complaint.

grievable matter, thus meeting the threshold issue of jurisdiction. Identified as the sole issue presented by McGrath was the following:

> Did the agency commit a procedural error when it allowed the 2003 Selection Board and 2003 Performance Standards Board to review an EER whose contents were under challenge before the EEOC?

Since the agency's decision did not address this claim, the Board remanded the proceeding to the Department for its consideration.

The Department's decision dated November 22, 2004, denied the grievance. In his December 20, 2004 appeal of the agency's decision, McGrath, requested a hearing. On October 14, 2005 the agency responded to grievant's discovery requests of October 4 by submitting a Motion to Consider Oral Argument. It also noted therein that it would respond to some, but not all, of grievant's discovery requests.

On November 16, the Board convened a pre-hearing conference. McGrath's counsel agreed that no evidentiary hearing would be necessary and the parties concurred that arguments would be submitted in writing rather than orally. The Board requested that the parties attempt to reach agreement on stipulated facts and established a November 28 deadline for grievant to file a motion to compel (MTC) discovery, if he so desired.

On November 28, grievant submitted a MTC. On December 9, the parties concurred as to stipulated facts. In its "Order: Stipulations, Motion to Compel Discovery, Submission of Written Arguments" dated January 11, 2006, the Board set forth the stipulated facts, denied the MTC in its entirety, and established a timeline for the submission of written arguments.

McGrath submitted his written argument on February 10, 2006; the Department on February 13. Grievant replied to the agency brief on February 27. The Record of Proceedings was closed on March 15, 2006.

### III. POSITIONS OF THE PARTIES

**The Grievant**

Based upon "exhaustive" research by counsel, McGrath asserts that the sole question before the Board in this appeal appears to be an issue of first impression. He finds his circumstances analogous "to a situation in which injunctive relief or a temporary restraining order is sought" because the risk of harm arising from his separation cannot be repaired by actions taken to rectify the situation after the issuance of a decision by the EEOC. "Given the high level of harm that will be suffered by a Foreign Service Officer who is ultimately vindicated through the EEO process" an EER under challenge in the EEO forum "should be treated as a non-final document . . ."

Further, the risk of harm to him "is greater than any potential harm the agency will suffer in having to wait until the EEO case is completed before relying upon the EER."

In support of his position, grievant cites numerous precedents including but not limited to, *Barrow v. Graham*, 124 F. Supp. 2d 714 (D.D.C. 2000), *May v. Gray*, 708 F. Supp. 716, 719 (E.D.N.C. 1998), *United States Info. Agency v. Krc*, 905 F.2d 389, 397 (D.C. Cir. 1990), and *Saunders v. George Washington University*, 768 F. Supp. 843, 845 (D.D.C. 1991).

With respect to the Department's argument that as grievant failed to seek a temporary relief order there was no procedural error, grievant asserts that the agency

relies upon a provision within Title VII "which is <u>not available to federal employees before the EEOC</u>." (Underlining in original)

**The Department**

The agency is unaware of any law or regulation prohibiting it from allowing a SB and/or a PSB to review an EER whose contents are under challenge before the EEOC. Nor has McGrath identified any such prohibition.

Furthermore, the 2003 SB and 2003 PSB "had no knowledge that this EER was being contested under an administrative proceeding." As the EER was upheld by the EEOC, there is no basis for the Board "to find that the review of this EER during the pendency of the EEO process constituted harmful procedural error for which a remedy should be granted."

The agency asserts that Section 2000e-5(f)(2) of Title 42, United States Code (Civil Rights Act of 1964), provides "the authority for the EEOC to bring an action for appropriate temporary or preliminary relief pending final disposition of a charge where a preliminary investigation demonstrates prompt judicial action is necessary." Even "assuming arguendo, that this provision could have applied" in the instant case, there is no evidence grievant sought a temporary relief order.

## IV. DISCUSSION AND FINDINGS

"In all grievances other than those concerning disciplinary actions, the grievant has the burden of establishing by a preponderance of the evidence, that the grievance is meritorious." [*See* 22 CFR 905.1(a)] For the reasons discussed below, the Board holds that McGrath has not met his burden.

McGrath asserts that it was (and, presumably, would be in all future similar cases) a procedural error for an agency to present to a SB an EER whose contents are under challenge before the EEOC.[2] He argues that he will suffer irremediable harm if the EER is included in his performance file while the challenge to it is pending. We consider that he cites no law, regulation, published policy, or provision of a collective bargaining agreement that was allegedly violated when the agency placed the challenged EER before the SB. He explicitly acknowledges that EEOC is without authority to prohibit the agency from including the EER in the performance file, but other than citing the harm he will suffer he offers no statutory or other basis for this Board to order such a prohibition-- in effect, to impose a stay or temporary restraining order on an agency action.

Before this Board may consider whether the harm to McGrath of allowing a SB to review a performance file containing a challenged EER outweighs the harm to the agency of prohibiting SB review of the EER, we must consider a threshold question: Do we have the authority to order such a stay? For the reasons that follow, we conclude that we have no such authority.

This Board is established as part of the Foreign Service grievance system provided for in Chapter 11 of the Foreign Service Act of 1980, as amended (FSA). Under this chapter, a grievance (as defined in Section 1101; *see* above) must first be presented to the agency (usually within two years of the incident giving rise to the grievance) for its consideration. Unless a particular law, rule, published policy, or provision of a collective bargaining agreement (CBA) indicates otherwise, the filing of a grievance with an agency does not operate to prevent the agency from completing its

---

[2] It is not clear whether McGrath is also arguing that this principle should be applied to EERs whose contents are challenged, on the basis of alleged discrimination or for any other reason, in some other forum.

action on the matter at issue, or from taking such further actions as may be contingent on that initial action. (There are two groups of exceptions to this basic principle, which we address below.) As discussed above, McGrath has not pointed to any law, rule, published policy, or CBA provision that prevented the agency from presenting the EER at issue to a SB while his challenge to it is pending before the EEOC.

An aggrieved member of the Foreign Service may not appeal a grievance to this Board until the agency has had an opportunity to review and rule on the matter being grieved, unless the agency fails to do so within 90 days, in which case the grievance may then be appealed to this Board. It is only after an appeal has been presented to the Board, and after we have established that we have jurisdiction over it,[3] that we have any authority to order the agency to take any action. We could not, therefore, have directed the agency not to present the challenged EER to a SB even if McGrath had requested that we do so at the same time that he submitted his challenge to the EEOC.

This Board is granted certain remedial powers (*see* Section 1107(b) of the FSA). These come into play only after a matter has been properly appealed to the Board and we have determined that the appeal is meritorious. As we have noted, however, there are two categories of exceptions to the above-described principle that an agency is free to act, and to complete whatever subsequent actions it deems appropriate, with remedies in meritorious cases being imposed only retrospectively:

- An agency may not separate a member of the FS for cause (*see* Section 610 of the FSA), until the member has first had a hearing before this Board (unless the member waives that right).

---

[3] We must determine, among other things, that the grievant/appellant has standing to file the appeal, that the appeal (and possibly the original grievance itself) was timely filed, and that the subject matter is within our jurisdiction.

- This Board may order interim relief for up to one year from an agency proposal to separate a member involuntarily (other than for cause), to discipline the member, or to recover monies from a member (*see* Section 1106(8) of the FSA).[4]

The fact that Congress authorized this Board to act prior to the taking of an agency action in certain specified circumstances is a clear indication that Congress did not intend to give the Board broader authority to order stays of agency actions.

The Board is aware that its remedial powers, as enumerated in Section 1107(b) of the FSA, particularly in cases involving assignment, tenure, and promotion, may not perfectly remedy the harm to an aggrieved member. Congress itself recognized the limitations of the remedial powers conferred upon the Board. Section 1107(d) of the FSA provides:

> If the Board finds that the grievance is meritorious and that remedial action should be taken that relates directly to promotion, tenure or assignment of the grievant or to other remedial action not otherwise provided for in this section, or if the Board finds that the evidence before it warrants disciplinary action against any employee of [an agency] or member of the Service, it shall make an appropriate recommendation to the [head of the agency] . . . .

The Board's awareness of the limitations of its remedial powers, including awareness that certain remedies may not fully compensate for the actual harm done to an employee, is not sufficient reason for the Board to assume an authority that Congress has not conferred on us.

Having determined that we lack the authority to order the type of stay McGrath proposes, we find it unnecessary to weigh the relative harms to the parties of allowing or

---

[4] We note that the Board's authority to order interim relief from involuntary separation of a member of the FS was removed from the FSA between September 30, 2002 [Pub. L. 107-228] and December 22, 2005 [Pub. L. 109-140], and would not have been available to delay McGrath's separation from the FS in any event.

not allowing a SB to review a challenged EER, or otherwise comment on how we might exercise such an authority.

Whether the Board should be granted the authority to order stays in cases such as McGrath's (or in any other circumstances not currently provided for in law), and if so how such authority should be exercised, are legitimate policy questions. They are more properly raised by submission to the agency or to Congress than in a grievance appeal to this Board.

## V. DECISION

The grievance appeal is denied.

For the Foreign Service Grievance Board:

*[signed]* for
Barry E. Shapiro
Presiding Member


*[signed]* for
Lois E. Hartman
Member


*[signed]* for
Theodore Horoschak
Member

FSGB 2004-070