UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MATTHEW JOSEPH MCGRATH, )<br> )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>CONDOLEEZA RICE, )<br>Secretary of State, )<br>    Defendant. )<br> )<br>_____ ) | Civil Action No. 05-2011 (RBW) |

**OPPOSITION TO MOTION TO DISMISS
OR FOR PARTIAL SUMMARY JUDGMENT**

  Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff Mark J. McGrath, through counsel, hereby files his Opposition to the Secretary of State's Motion to Dismiss and/or for Partial Summary Judgment in the above-captioned civil action. As an initial matter, Plaintiff agrees that gender was not previously raised as a basis of discrimination in any of his prior EEO proceedings, and was not preserved as a basis. Plaintiff avers that his claim of gender discrimination was a typographical error and that claim is hereby withdrawn. Meanwhile, the government has misconstrued Plaintiff's request for equitable relief in the form of reinstatement as a claim for "wrongful termination." As demonstrated below, the government is entitled neither to dismissal of nor to summary judgment on Plaintiff's entitlement to reinstatement if he prevails.

**I.  MOTION TO WITHDRAW CLAIM OF GENDER DISCRIMINATION**

  For the above-identified reasons, Plaintiff hereby moves to withdraw his claim of gender discrimination.

## II. STATEMENT OF THE CASE

Plaintiff hereby adopts and incorporates the government's statement of the case. See <u>Defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss in Part of In the Alternative for Partial Summary Judgment</u> ("MTD") at 1-4 (§§A-B). In addition, he cites the following undisputed facts.

1. Plaintiff's complaint includes an allegation that he received a negative performance rating (2001-02 Employee Evaluation Report ["EER"]) due to discrimination based on his race and/or in retaliation for his prior protected activity. See MTD Ex. 1; MTD Ex. 4 at 4-5.

2. Pursuant to 3 FOREIGN AFFAIRS MANUAL ("FAM") 730(1)(a), Foreign Service officers who "have been identified by the preceding session of the Selection Boards as having failed to meet the standards of performance for their class and whom have been certified to the [Performance Standards Board ("PSB")] by the Director General of the Foreign Service" are reviewed annually for possible mandatory retirement ("selection out") from the Foreign Service. MTD Ex. 6 at 3.

3. Plaintiff was certified to the PSB following his low rankings in 2000, 2001, 2002 and 2003. MTD Ex. 6 at 6-7.

4. Having reviewed Plaintiff's performance file, the PSB highlighted several alleged performance deficiencies that were contained within the 2001-2002 EER which Plaintiff has challenged as discriminatory:

- "In the most recent EER (2001-2002) in the file, Mr. McGrath is shown to have serious management deficiencies as a Division Chief in ECA, supervising eight employees";

- "The 2001-2002 Reviewing Officer, a [deputy Assistant secretary], details one particularly egregious example of managerial neglect . . .";

- "In 2001-2002 the Rating Official noted that 'Throughout the rating period Mr. McGrath demonstrated an aversion to leadership that frustrated his staff as well as me'";

- "The most recent EER for the year 2001-2002 states, 'Since his return from home leave in late February 2002, Mr. McGrath has been almost reclusive. Several of his program officer staff have commented to me that they felt 'shut out' of any conversation with him and had no idea of his opinions on important program issues'"; and

- " . . . the most recent EER in the file (2002-2002)(sic) [ ] depicts an officer who has abdicated the responsibilities of his job";

- "Clearly, Mr. McGrath has demonstrated a number of highly developed skills necessary for Foreign Service work. It is with regret, then, that the [PSB] notes an erosion of performance in recent years, with areas of weakness coming to dominate while strengths seem to fade."

MTD Ex. 6 at 7-11.

5. The PSB concluded: "Mr. McGrath's steadily declining performance as documented in his EERs fails to meet the standards of his class and falls well below that of other members in the same grade. Therefore, the Board recommends that Mr. McGrath be selected out." MTD Ex. 6 at 11-12. .

6. On November 17, 2004, Plaintiff filed a grievance with the Department asking for prescriptive relief in the form of a delay in his termination while his EEO complaint was pending. MTD Ex. 8 at 1-2. Plaintiff argued that

>A review of the Decision of the PSB reveals that the decision is based almost exclusively upon the comments contained in the 2001-22 EER issued to Mr. McGrath. The 2001-2002 EER is the subject, in part, of a pending EEO complaints by Mr. McGrath. . . . [A] decision by the EEOC in Mr. McGrath's favor in his pending EEO case will result in the award of damages that would include expungement and correction of the 2001-2002 EER. Under these circumstances, the PSB should have been precluded from relying upon the 2001-2002 [EER] in considering Mr. McGrath's overall performance and doing so has rendered the Decision of the PSB fatally flawed.

Id.

7.  On November 22, 2004, the Department denied Plaintiff's grievance, stating that neither it nor the Foreign Service Grievance Board possesses the authority to grant prescriptive or interim relief from separation. MTD Ex. 9 at 2.

8.  Plaintiff was terminated effective November 30, 2004. MTD Ex. 8 at 1.

### III. ARGUMENT

The government seeks dismissal or summary judgment with respect to Plaintiff's request for reinstatement as a form of equitable relief. MTD at 1. The dismissal and summary judgment standards cited by the government are inapposite and the government's motion is fatally flawed in three important respects. First, the FEDERAL RULES OF CIVIL PROCEDURE do not provide for dispositive motions with respect to forms of relief. Second, there is no requirement that a plaintiff exhaust remedies with respect to a requested form of relief; s/he need only specify all requested forms of relief in the pleadings. Third, "the questions of statutory violation and appropriate statutory remedy are conceptually distinct," and the question of appropriate relief cannot be reached until the finder of fact has determined whether any statutory violation has occurred. Smith v. Secretary of the Navy, 212 U.S. App. D.C. 229, 659 F.2d 1113, 1120 (D.C.Cir.1981). For all of these reasons, the agency's motion should be DENIED.

A.	Plaintiff Has Not Filed a "Claim" of Wrongful Termination.

Plaintiff does not claim that his termination or "selection out" was itself discriminatory. Rather, as should be clear from the complaint and the Statements of Facts, he claims that he was terminated as a direct and inevitable result of his receipt of the unfairly low performance evaluation for 2001-2002. See MTD Ex. 6 at 6-12 (PSB relied heavily upon 2001-2002 EER in selecting Plaintiff out). The FAM and the PSB Precepts *require* that foreign service officers whose performance is unsatisfactory and who have a correspondingly low-rank within their classes be "selected out." Given these inflexible requirements of the Foreign Service, it was the agency's action in giving Plaintiff the discriminatory low rating in 2001-2002, rather than any actionable improprieties in the PSB's deliberations, which caused Plaintiff to lose his employment. Because Plaintiff was terminated as a direct and inevitable result of the 2001-2002 EER, he should be reinstated to be made whole if the finder of fact determines that that EER - upon which the PSB relied heavily in deciding to select Plaintiff out - was discriminatory.

Because Plaintiff has not alleged that his termination was itself discriminatory, he cannot be said to have raised a *claim* of "wrongful termination." Thus, contrary to the government/s interpretation of his request to reinstatement of an equitable relief, there is no termination claim

(a)	for which Plaintiff should have exhausted his administrative remedies, and

(b)	which could be the subject of a motion to dismiss under Rule 12 or for summary judgment under Rule 56

at issue herein. See FED.R.CIV.P. 12(b) (specifying how to present defenses with respect to "a claim for relief in any pleading,"); and 56 (permitting motions for summary judgment as to a

"claim, counterclaim, or cross-claim"). The agency's motion should be denied.

> B. The Government Has Cited No Authority for the Proposition that Plaintiff Must Exhaust Remedies Prior to Seeking a Particular Form of Relief.

FED.R.CIV.P. 8(a) ("General Rues of Pleading: Claims for Relief") requires that any pleading which sets forth a claim for relief contain "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends [ ], (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded." Plaintiff complied with this requirement, and was careful to identify all forms of relief requested during the administrative exhaustion process, as is evidenced by MTD Ex. 7.

As such he has complied with all applicable notice and pleading requirements for his requested remedy of reinstatement.

> C. Plaintiff's Request for Reinstatement Flows Rationally from a Claim For Which He Properly Exhausted All Administrative Remedies.

The government does not claim that Plaintiff failed to exhaust remedies with respect to his claim that the 2001-2002 EER was discriminatory. See generally MTD. Because Plaintiff's request for reinstatement arises from this properly-raised and -preserved claim for relief,

> 1. Reinstatement is a Form of Equitable Relief Available Under Title VII.

Plaintiff's request for reinstatement as a form of relief from the discriminatory EER is well within the bounds of equity. In Smith v. Secretary of the Navy, the U.S. Court of Appeals for the D.C. Circuit recognized that a negative evaluation may have reverberating harmful effects on an employee, for which s/he may seek relief:

> Where the plaintiff is a victim of prohibited discrimination by an employer subject to the Act, he plainly falls within the zone of protected interests. Moreover, the location of an unfavorable evaluation in appellant's personnel files, presently injuring his reputation and threatening him with denial of future benefits rightfully due him, plainly enabled him to satisfy both the constitutional and the statutory requirements of injury-in-fact.

659 F.2d at 1120. The court's recognition of this reality is directly applicable herein, where Plaintiff can demonstrate that he would not have been terminated if not for the 2001-2002 EER.

In enacting Title VII, Congress expressly provided for reinstatement as a form of equitable relief. The enforcement provision of the Civil Rights Act of 1964 states:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without backpay . . . , or any other equitable relief as the court deems appropriate.

42 U.S.C. §2000e-5(g)(1). In Albemarle Paper v. Moody, the U.S. Supreme Court explained in detail the equitable mission of Title VII:

> It is also the purpose of Title VII to make persons whole for injuries suffered on account of unlawful employment discrimination. This is shown by the very fact that Congress took care to arm the courts with full equitable powers. For it is the historic purpose of equity to "secur[e] complete justice," Brown v. Swann, 10 Pet. 497, 503 (1836); see also Porter v. Warner Holding Co., 328 U.S. 395, 397-98 (1946). "[W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." Bell v. Hood, 327 U.S. 678, 684 (1946). . . . The terms "complete justice" and necessary relief" have acquired a clear meaning in such circumstances. . . . and where a legal injury is of an economic character, 'the general rule is, that when a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury. The latter is the standard by which the former is to be measured. The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." Wicker v. Hoppock, 6 Wall. 94, 99 (1867).

422 U.S. 405, 418-419 (1975).         .

If Plaintiff prevails in his claim for relief from the rating alleged to be discriminatory, he

will be entitled to be made whole or placed "in the situation he would have occupied had the wrong not been committed." See Wicker, *supra*. Plaintiff's entitlement to seek reinstatement, without having filed a claim of wrongful termination, is fully consistent with Title VII and the interpretive case law.

## IV.    CONCLUSION

Plaintiff has not stated a claim of wrongful or discriminatory termination. The agency's motion to dismiss or for judgment as a matter of law as to this non-existent claim is thus ill-conceived and misdirected. The government is entitled neither to dismissal of nor to Summary Judgment with respect to a requested form of relief. Based on the foregoing points and authorities, Plaintiff is well within his rights to request reinstatement as a form of equitable relief under Title VII. His claim of gender discrimination having been withdrawn, the agency's motion with respect to Plaintiff's non-existent termination claim should be DENIED.

Respectfully submitted,

　　/s/ Michelle L. Perry　　　　
Michelle L. Perry, Esq. (D.C. Bar No. 468187)
KALIJARVI, CHUZI & NEWMAN, P.C.
1901 L Street, NW
Suite 610
Washington, D.C. 20036
Tel: (202) 331-9260
Fax: (202) 331-9261
*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served by ECF on November 2, 2007.

      SHEREASE PRATT
      Special Assistant United States Attorney
      United States Attorney's Office
      Civil Division
      555 4th Street, N.W.
      Washington, D.C. 20530
      Fax: 202/514-8781


          /s/
      _____
      Michelle L. Perry