# EXHIBIT 10


## DECLARATION OF SANDY ROUSE

1. In accordance with the provision of Title 28, United States Code, Section 1746, I, Sandy Rouse, make the following declaration to Betty L. Cox who has identified herself to me as an EEO Investigator, Southwind Enterprises, Inc. assigned by the US Department of State to perform this investigation, knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to any party who must have access to this information in order to carry out his or her official duties.

2. This statement is given in relation to a complaint of discrimination filed by Matthew J. McGrath.

3. *I am aware that the accepted claims in this complaint are that because of his race (Caucasian) and as reprisal for his having engaged in prior protected activity and/or for opposing discriminatory practices, he was discriminated against and subjected to a hostile work environment when:*

   a) *His supervisor attempted to undermine his authority as Chief, Division of Citizen Exchanges, Office of Cultural Programs, Bureau of Educational and Cultural Affairs;*

   b) *his supervisor gave him a negative performance evaluation as Chief, Division of Citizen Exchanges, on 4/11/02 and 4/29/02;*

   c) *he was subjected to an involuntary curtailment of his assignment as Chief, Division of Citizen Exchanges, Office of Cultural Programs, Bureau of Educational and Cultural Affairs; and*

   d) *the discriminatory curtailment had the result of denying Complainant a career-enhancing follow-on assignment.*

Q   Please state your full name.

A   Sandra H. Rouse

Exhibit __9__

Initials *[signature]*

Page 1 of 8

| | | |
|---|---|---|
| 1 | Q | Please state your title and grade, the name of the agency by which you are |
| 2 | | employed, the organizational unit to which you are assigned, and the |
| 3 | | address of your duty station. |
| 4 | A | Program Officer, GS-13, Department of State, Cultural Programs Division, |
| 5 | | ECA/PE/C/CU, Room 568, SA-44 |
| 6 | Q | Please state your organizational work relationship to Matthew McGrath at |
| 7 | | the present time. |
| 8 | A | None |
| 9 | Q | Please state your work relationship to Mr. McGrath at the time of the matters |
| 10 | | at issue in his complaint. |
| 11 | A | Program officer for performing arts, Cultural Programs, Division |
| 12 | Q | Please state your work relationship to Van S. Wunder at the present time, |
| 13 | | and if different, at the time of the matters at issue in Mr. McGrath's |
| 14 | | complaint. |
| 15 | A | Mr. Wunder is Executive Director, Office of Citizen Exchanges. Cultural |
| 16 | | Programs is one of the elements of that office. |
| 17 | Q | Please state your race. |
| 18 | A | Caucasian |
| 19 | Q | Have you previously participated in activities protected under Title VII of the |
| 20 | | Civil Rights Act of 1964, as amended, such as by protesting alleged |
| 21 | | discriminatory activities or by participating in any way in the EEO process? |
| 22 | A | No |
| 23 | Q | Are you aware of the Department of State's policy on harassment? Have you |
| 24 | | received training in that policy? |
| 25 | A | Yes. No. |
| 26 | Q | Are you aware of how to raise concerns about harassment in order to have |
| 27 | | those concerns addressed? |
| 28 | A | No |

| | | |
|---|---|---|
| 1 | a) | *his supervisor attempted to undermine his authority as Chief, Division of* |
| 2 | | *Citizen Exchanges, Office of Cultural Programs, Bureau of Educational and* |
| 3 | | *Cultural Affairs* |
| 4 | Q | Mr. McGrath alleges that Mr. Wunder attempted to have him dismiss from |
| 5 | | employment Evangeline "EJ" Montgomery.  He contends Mr. Wunder told |
| 6 | | him to document problems in her performance with the view to using that |
| 7 | | information to terminate her employment.  Do you have any reason to |
| 8 | | believe Mr. Wunder was trying to pressure Mr. McGrath to document |
| 9 | | performance problems with Ms Montgomery in order to terminate her |
| 10 | | employment?  What leads you to the conclusion reached? |
| 11 | A | Mr. McGrath told me that was the case. |
| 12 | Q | Did Ms Montgomery exhibit any problems in accomplishing her work, to |
| 13 | | your knowledge, that indicated she needed assistance or accommodation in |
| 14 | | order to complete her major duties?  Please explain. |
| 15 | A | No |
| 16 | Q | Do you have any reason to believe that Mr. Wunder retaliated against Mr. |
| 17 | | McGrath because he refused to document performance problems and |
| 18 | | discharge Ms Montgomery from employment?  What leads you to the |
| 19 | | conclusion reached? |
| 20 | A | No |
| 21 | Q | Do you have any direct knowledge of whether or why Mr. McGrath's home |
| 22 | | leave while he was Division Chief was shortened from 25 work days to 20 |
| 23 | | work days?  If so, please describe your knowledge and explain how you |
| 24 | | come by it |
| 25 | A | No |
| 26 | Q | Do you recall a project being assigned to Ms Montgomery by Mr. Wunder?  If |
| 27 | | so, in your opinion was the assignment out of the ordinary in terms of the |
| 28 | | kinds of assignments Ms Montgomery (or other program officers) received? |
| 29 | | Please explain. |

| | | |
|---|---|---|
| 1 | A | No. Several of the staff were asked to assist with the After 9/11 Meyerowitz |
| 2 | | photo exhibit which was an ECA priority. |
| 3 | Q | Did you observe any conduct on the part of Mr. Wunder toward Mr. |
| 4 | | McGrath that led you to conclude Mr. Wunder was biased against Mr. |
| 5 | | McGrath because of Mr. McGrath's race? If so, please describe the conduct |
| 6 | | and explain what led you to conclude Mr. Wunder held a racial bias against |
| 7 | | Mr. McGrath. |
| 8 | A | No |
| 9 | Q | Did you observe any conduct on Mr. Wunder's part that indicated to you he |
| 10 | | was trying to undermine Mr. McGrath's authority with his staff or over his |
| 11 | | division? If so, please describe the conduct and explain what led you to |
| 12 | | conclude Mr. Wunder was attempting to undermine Mr. McGrath's |
| 13 | | authority. |
| 14 | A | No |
| 15 | Q | Did you observe any conduct by Mr. Wunder that you interpreted as being |
| 16 | | intended to create a hostile work environment for Mr. McGrath? If so, please |
| 17 | | describe the conduct and explain what leads you to conclude this was |
| 18 | | intended to harass Mr. McGrath and cause a hostile work environment. |
| 19 | A | No |
| 20 | Q | According to your direct knowledge, when Mr. McGrath went on home |
| 21 | | leave, was everything completed and in place for the Secretary of State to |
| 22 | | host a reception in honor of the Thelonius Monk Institute and the winner of |
| 23 | | its international jazz competition, including any necessary certificates of |
| 24 | | appreciation? Please describe your knowledge and explain how you come by |
| 25 | | it. |
| 26 | A | I was informed by Mr. McGrath that while he was on leave Ray Harvey |
| 27 | | would handle the arrangements for the reception with the office of Protocol |
| 28 | | and he did. The certificate was not related to the Monk Institute reception. It |
| 29 | | was for the Kennedy Center event honoring Dr. Billy Taylor. Messrs. |

| | | |
|---|---|---|
| 1 | | Wunder and Sexton advised me after Mr. McGrath left for home leave that |
| 2 | | the certificate was not completed. |
| 3 | Q | Mr. McGrath alleges Mr. Wunder opposed the reception being held. Mr. |
| 4 | | McGrath also alleges the reception was a success, and that Mr. Wunder was |
| 5 | | "obviously embarrassed on having his insensitivity and poor professional |
| 6 | | judgement revealed for all to see." To your knowledge, was the reception a |
| 7 | | success? Do you have any reason to believe Mr. Wunder was embarrassed |
| 8 | | by the project being successful or because the success revealed "his |
| 9 | | insensitivity and poor judgement for all to see?" Please explain. |
| 10 | A | The reception was a success. Mr. Wunder did not appear embarrassed at the |
| 11 | | reception. |
| 12 | Q | Is there anything you would like to add to your statement about this claim? |
| 13 | A | No |
| 14 | b) | *his supervisor gave him a negative performance evaluation as Chief,* |
| 15 | | *Division of Citizen Exchanges, on 4/11/02 and 4/29/02;* |
| 16 | Q | Did Mr. McGrath hold staff meetings? If so, how frequently? |
| 17 | A | Once |
| 18 | Q | Did you find it easy to gain access to Mr. McGrath to discuss any problems or |
| 19 | | concerns you had about the programs or projects for which you were |
| 20 | | responsible? Please give specific examples. |
| 21 | A | Yes He was very supportive of the Jazz Ambassador program. |
| 22 | Q | Did Mr. McGrath seek you out to discuss programs and projects assigned to |
| 23 | | you? |
| 24 | A | Yes |
| 25 | Q | Were you aware of the budget for projects or programs assigned to you or |
| 26 | | what had been spent against budget at any given time? |
| 27 | A | Yes |
| 28 | Q | Did you have occasion to telephone Mr. McGrath or send him emails? If so, |
| 29 | | did he tend to respond to you in a timely manner? |

Initials _____                                                      Page 5 of 8

| | | |
|---|---|---|
| 1 | A | I sent him emails and he responded in a timely manger. |
| 2 | Q | How would you describe Mr. McGrath's management style? |
| 3 | A | Informal. Direct. |
| 4 | Q | Did you ever ask Mr. McGrath to clear a routine cable for you? If so, did he |
| 5 | | do so? Who typically responded to your requests for such routine matters? |
| 6 | A | Yes. Yes. Mr. McGrath |
| 7 | Q | During Mr. McGrath's home leave, did you have occasion to talk with Mr. |
| 8 | | Wunder about Mr. McGrath's performance as a manager? If so, did you raise |
| 9 | | to Mr. Wunder's attention any concerns you may have had about his |
| 10 | | management? Please describe your conversation with Mr. Wunder. |
| 11 | A | No |
| 12 | Q | Were you familiar with the division's budget when Mr. McGrath was |
| 13 | | division chief? |
| 14 | A | I was familiar with the budget for the Jazz Ambassador program. |
| 15 | Q | Mr. Wunder directed Mr. McGrath in a March 8 memorandum to begin |
| 16 | | holding regular, weekly staff meetings. Did Mr. McGrath begin holding |
| 17 | | regular, weekly staff meetings after March 8? |
| 18 | A | No |
| 19 | Q | The March 8 memo also directed Mr. McGrath to take time to meet with each |
| 20 | | of his staff members individually and review with them their projects, |
| 21 | | budgets and plans. Did Mr. McGrath meet with you individually to review |
| 22 | | your project, budgets, and plans? |
| 23 | A | Yes |
| 24 | Q | Is there anything you would like to add to your statement on this claim? |
| 25 | A | No |
| 26 | c) | *he was subjected to an involuntary curtailment of his assignment as Chief,* |
| 27 | | *Division of Citizen Exchanges, Office of Cultural Programs, Bureau of* |
| 28 | | *Educational and Cultural Affairs* |

| | | |
|---|---|---|
| 1 | Q | Do you have any direct knowledge of the decision to involuntarily curtail Mr. |
| 2 | | McGrath's assignment as Chief, Division of Citizen Exchanges? If so, please |
| 3 | | describe your knowledge and explain how you come by it. |
| 4 | A | Mr. McGrath alluded to the possibility that he would leave his assignment |
| 5 | | about a week or ten days before he did. When he left Mr. Wunder and DAS |
| 6 | | Stephen Hart met with the Cultural Programs staff to announce that he had |
| 7 | | left. |
| 8 | *d)* | *the discriminatory curtailment had the result of denying Complainant a* |
| 9 | | *career-enhancing follow-on assignment.* |
| 10 | Q | Do you have any direct knowledge of whether the curtailment had the result |
| 11 | | of denying Mr. McGrath a career enhancing follow-on assignment? If so, |
| 12 | | please describe your knowledge and explain how you come by it. |
| 13 | A | No |
| 14 | | |

1   I declare under penalty of perjury that the foregoing is true and correct.
2   Executed on this day, *August 13*, 2002.
3
4   *Sandra H Rouse*
5   Sandy Rouse
6
7
8