# EXHIBIT 41

Case 1:05-cv-02011-RBW    Document 41-42    Filed 09/15/2008    Page 1 of 15

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MATTHEW JOSEPH MCGRATH, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No: 05-2011 (RBW) |
| CONDOLEEZA RICE, Secretary of State | ) |
| Defendant | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

**I.   INTERROGATORIES**

1. Identify each and every person with personal knowledge of facts which you contend support your claim for discrimination and/or retaliation in this matter and summarize their knowledge.

Response: Objection, overbroad and overburdensome. Plaintiff is not aware of every individual who may have knowledge nor is he aware of all knowledge each individual identified may possess related to his claims. Notwithstanding objection, Plaintiff identifies the following individuals -

Patricia Harrison--ECA Assistant Secretary who approved my involuntary curtailment. Mr. Sexton and Mr. Hart's supervisor.

Brian Sexton--ECA DAS from Sept. 2001-Feb. 2002. Mr. Wunder's supervisor. Submitted an EER review though he was no longer in the position in April 2002.

Stephen Hart--ECA DAS from Feb.2002 until my involuntary curtailment. Mr. Wunder's supervisor and my EER reviewing officer in April 2002 but did not submit or sign any review.

Sam Wunder--ECA Office Director and my supervisor.

<u>Jackie Hill</u>--an official in ECA personnel who I initially consulted concerning my EEOC complaint and who consulted with ECA Executive officer Dave Whitten. Ms. Hill made no effort other than consulting with Mr. Whitten to address my complaint and, in particular, did not appropriately refer me to the Office of Civil Rights.

<u>Dave Whitten</u>--ECA Executive Officer who Jackie Hill consulted with concerning my EEOC complaint.

<u>Ruth Davis</u>--Director General who approved my involuntary curtailment.

<u>Jim Bigart</u>--My Career Counselor who urged me to voluntarily curtail and who told me I had no basis for an EEOC complaint and who made almost no effort to find me an appropriate position after my curtailment.

<u>See</u> also Plaintiff's responses to the Agency's discovery responses and the EEOC hearing transcript in the administrative process which identified the members of the office Plaintiff worked in and other individuals with knowledge of the events.

2. Identify each and every document referring or related to the allegations set forth in your Amended Complaint, including in your answer the name and address of the present custodian of each such document, and if any such document has been destroyed or otherwise disposed of, the date and circumstance of such disposition.

<u>Response</u>: Objection, overbroad and overburdensome. Plaintiff is not aware of every document referring or relating to his allegations. Notwithstanding objection, Plaintiff provides that all known documents are contained in files from the administrative process and the Agency files concerning his termination which are not in Plaintiff's possession, custody or control.

3. Identify each and every person who has provided you, your representatives or agents with oral or written statements referring or related to the allegations set forth in your Amended

2

Complaint, including in your answer the date of each such statement and the custodian of any written statement or transcript or recording of such statement.

Response: Objection, attorney-client privilege and attorney work product privilege. Notwithstanding objection, Ms. LaFaye and Ms. Proctor provided statements that were produced during the administrative process.

4. Provide an itemized account of each and every pecuniary loss and expense you claim to have suffered as a result of the alleged discrimination and/or retaliation described in your Amended Complaint, including but not limiting your answer to lost wages, benefits, attorney's fees, and including in your answer the dates on which each loss or expense was incurred.

Response: Plaintiff has lost approximately $240,000 in lost salary and benefits as of September 2007. In addition, Plaintiff has incurred medical fees and costs of approximately $14,000 as of September 2007. Plaintiff has also incurred attorneys' fees and costs that continue to accrue as time goes by. Plaintiff will supplement this response with additional information as it becomes available.

5. State the basis for the allegations made in paragraphs 14, 16, 20, 57, and 58 of your Amended Complaint, in which you state that "Mr. Wunder treated African American woman differently than he did white women;" Mr. Wunder "gave white women promotions and better work assignments than African American women;" Mr. Wunder's favorite employees in the division were white employees;" Mr. Wunder had a "discriminatory bias against people of color and people who advocate for fair treatment for racial and ethnic minorities;" Mr. Wunder had "racial insensitivities and bias."

3

Response:   Mr. Wunder repeatedly took the side of Ms. Katherine Wainscott, Caucasion, against Ms. LaFaye Proctor, African-American, despite my advocacy for even-handedness. He overruled my approval for Ms. Montgomery's more appropriate travel while approving much more expensive travel of Ms. Wainscott and Ms. Leanne Mella, both also Caucasion. Mr. Wunder gave Ms. Montgomery extra work on the 9/11 exhibit when there were other employees who could have and should have shared in the work and was unhappy when Ms. Proctor and Ms. Chapman assisted her. Mr. Wunder talked repeatedly to the white officers in my office complex, entertaining them often in his office as well, but I never saw him in conversation with Ms. Montgomery in either. Mr. Wunder employed an insulting tone when he on two occasions referred to "that Cuban" Mo Garcia and became almost hostile when I argued on behalf of fairness and racial balance in programming and personnel issues and on behalf of Ms. Montgomery in particular.

6.    State the basis for the allegation made or inferred in paragraphs 11, 15, 17, 20, and 21 of your Amended Complaint that you had a "positive reputation concerning diversity issues" and were an advocate for the rights of minorities, and that Mr. Wunder was aware of such a reputation.

Response:  Ms. Chapman, an African-American, voluntarily came to me during the first days of my assuming my position as Director of Cultural Programs, to warn me of Mr. Wunder's negative behavior towards the office in general and about the racial tensions in particular. Though I had not met Ms. Chapman previously, she offered this advice based on her understanding of my reputation passed on by a friend of hers, Ms. Sheila Savoy, an African-American woman, I had worked with previously. I pointed out to Mr. Wunder during our

conversations about the office and Ms. Montgomery and others in ECA that in my previous position in the new post-apartheid South Africa I had practiced a vigorous affirmative action program there unlike many of my white colleagues there. I freely talked about my multi-racial daughter. I have many African-American friends and colleagues, like Al Head, who will testify to my sensitivity on racial matters and reputation for the same.

7. State the basis for your allegations that Mr. Wunder was aware that your refusal to follow his instructions regarding your supervision of Ms. Montgomery was based on your belief that Mr. Wunder was motivated by discriminatory animus.

Response: My discussions with Mr. Wunder often centered on race. We discussed at length on many occasions my concerns about the racial bias of certain of our programs like the Festival Fund and Cultural Specialist program. We discussed several times his bias agsinst Ms. Proctor in her dealings with Ms. Wainscott as well as his bias and insensitivity towards Ms. Montgomery and the need for racial balance in our senior staff as well as her age and disability.

8. Describe each and every occasion referred to in ¶ 21 of your Amended Complaint in which you allege that Mr. Wunder sought your "intervention on the side of white" employees against African American employees, including the nature of intervention sought, how the requested intervention would have been "racially insensitive;" and the bases for your refusal to intervene.

Response: Many of the occasions are listed in my June 2002 EEOC complaint. Others took place from time-to-time and are too numerous to mention here. All of the following began soon after I assumed my position. I recall on at least 3 occasions where I had to resist his attempts to have me discipline Ms. Proctor in favor of Ms. Winscott citing what should be our racial sensitivity and

5

our professional judgment as it was mine. On many occasions he resisted my attempt to make our programming, specifically the Festival Fund, administered by Ms. Wainscott and Ms. Mella, both white, and the Cultural Specialist program, almost all of whom were administered by white members of staff, more racially balanced. Though they did not initiate my requests for more racially balanced programming, the three African-American members of my staff, Ms. Montgomery, Ms. Chapman and Ms. Proctor supported my efforts which I also reported to Mr. Wunder to support my position. Mr. Wunder displayed a consistent bias during these conversations whether I resisited his demands for discipling Ms. Proctor or his resisting my requests for more racially balanced programming. The basis for my refusal is that I I considered his positions to be highly unethical, biased, insensitive, prejudicial and illegal.

9.  Identify and describe any and all EEO complaints, both formal and informal, in which you have been involved, including as a complainant, a witness, or a respondent, and state the dates they were brought; the agency or employer against which the complaints were made; the names and employment positions of the persons who fled the complaints (if other than you); all circumstances which led to their filing; what issues were alleged; whether they constitute the grounds upon which this civil action is based; whether they were resolved; and if they were resolved, on what terms.

Response: Only my current EEOC complaints pending before the District Court. I have not been involved in any other EEOC complaint in any way.

10. State the basis for all allegations made or inferred in the Amended Complaint, including, but not limited to, paragraphs, 21, 30, 39, 40, 42, and 55, of retaliation by any employee of Defendant for your actions in support of minority employees and minorities in general,

and describe the nature of that retaliation and identify all persons who retaliated or have knowledge of such retaliation.

Response: See generally Amended Complaint.

Sam Wunder--threatened me with punishment, including a negative EER, if I did not begin the process of terminating Ms. Montgomery despite my argument that it was unethical and illegal. In addition to his harassing me, he wrote not just one extremely negative EER rating me, but when I argued that he was punishing me for not following his orders to terminate Ms. Montgomery, he wrote a second more negative EER this one with the addition of a negative reviewing statement from former DAS Brian Sexton. This took place over a month after I approached Jackie Hill about filing an EEOC complaint. He then contacted the personnel office, along with Mr. Stephen Hart to get me to voluntarily curtail from my position and when I wouldn't contacted Ms. Patricia Harrison and the Director General to get me involuntarily curtailed

Brian Sexton--wrote a reviewing statment for the second EER despite the fact that he had not been DAS for 2 months.

Stephen Hart--DAS who should have written a reviewing statement for my EER instead of Brian Sexton. He made no effort to mediate the dispute or assist me or show any concern after I informed him of my EEOC complaint. Indeed he advocated my voluntary curtailment and my involuntary curtailment.

Jackie Hill--after I approached Ms. Hill about filing an EEOC complaint, she made no effort to assist me, not even to refer me to the appropriate Office of Civil Rights. She informed me that she had consulted her supervisor, Mr. Dave Whitten, on the matter.

Dave Whitten--did not assist me himself or through Ms. Hill. I am unaware of what both Mr.

7

Whitten and Ms. Hill did with the knowledge of my interest in filing an EEOC complaint as they were not the appropriate individuals to have this knowledge and made no effort to assist me as an executive/personnel office/officer should.

Patricia Harrison--approved my involuntary curtailment. She would have learned of my EEOC complaint throught Mr. Hart.

Ruth Davis--approved my involuntary curtailment. She would have learned of my EEOC complaint through Ms. Harrison. In addition, I know she knew of it through Hattie Baldwin

Jim Bigart--informed me that I had no basis for an EEOC complaint and urged me to voluntarily curtail my position. He made almost no effort to find me an appropriate follow-up position and suggested I lie to any prospective supervisors about my EEOC complaint. He had me walk the halls without a position for 6 months thereby ensuring that I would not receive any EER least of all a favorable EER for 2002-2003 and then placed me without my approval in an inappropriate and unpromoteable position in the declassification office where I languished in a windowless warehouse office in out-of-the-way Springfield, Virginia until I was terminated in 2004.

Mr. Campbell--approved my 6-day and my 2-day suspensions after I filed my EEOC complaint.

Ms. Powell--suggested my 2-day suspension after I filed my EEOC complaint.

11. State the basis for all allegations made or inferred in the Amended Complaint, including, but not limited to, paragraphs, 21, 30, 39, 40, 42, and 55, of retaliation by any employee of Defendant for your EEO activity, and describe the nature of that retaliation and identify all persons who retaliated or have knowledge of such retaliation.

Response: See generally Amended Complaint and Response to Interrogatory No. 10.

12. Describe all communications between yourself and Mr. Wunder concerning Ms.

8

       Montgomery's performance and alleged proposed termination, including the reasons given by Mr. Wunder for her proposed termination, and describe "pressing" as used in ¶31,

Response: See written EEOC complaint of June 2001. Mr. Wunder "pressed" me by repeatedly verbally ordering me to begin the process of terminating Ms. Montgomery from the fall of 2001 until April 2002.

13.    State the basis for your allegations, as stated in paragraphs 31 and 33 of your Amended Complaint, that you were instructed by Mr. Wunder "to document Ms. Montgomery's performance with the intent to terminate her employment," and that Mr. Wunder sought to terminate Ms. Montgomery based on her race, gender, age and disability."

Response: See answer to Interrogatory No. 12 herein. Mr. Wunder repeatedly verbally cited her advancing age, her inability to perform based on her Parkinson's disease and was unmoved by my citing the need for African-American expertise at the senior programming level where Ms. Montgomery was the sole representative. On the last point, Mr. Wunder bragged that he earlier in his career had gotten rid of (actually he had only tried) that "Cuban" Mo Garcia.

14.    State the basis for your allegation in ¶ 43 of your Amended Complaint that "Mr. Wunder rated Ms. Montgomery's performance for 2002 as excellent in order to make it falsely appear as if Mr. Wunder had not told Mr. McGrath he wanted Mr. McGrath to terminate Ms. Montgomery for poor performance."

Response: The timing of Mr. Wunder's rating of Ms. Montgomery came after he became aware of my EEOC complaint.

15.    State the basis for all allegations, especially those in paragraphs 41-42 of your Amended

9

Complaint, that Mr. Wunder or any other supervisor of yours, whether directly or indirectly, retaliated against you "by attempting to intimidate" you.

Response: Mr. Wunder verbally told me that if I did not begin the process of terminating Ms. Montgomery he would make sure that it would reflect negatively on me in my rating and otherwise. Not satisfied with his first negative rating of me and my reaction to it, he wrote a second one, this time including a negative reviewing statement from Mr. Sexton (I believe Sam wrote the reviewing statement) who had departed his position at least 2 months previously. Mr. Stephen Hart, Mr. Sexton's successor as DAS, made no effort to mediate the situation after I consulted him. He and Mr. Wunder requested that the Office of Personnel summon me to a meeting where my Career Counselor Mr. Jim Bigart urged me to voluntarily curtail my position. When I refused, they made the request of the Assistant Secretary and the Director General to involuntarily curtail me. Mr. Bigart made almost no effort to find me another subsequent position.

16.    Describe "protected activity" as used or otherwise mentioned in paragraphs 3, 55, 66-71 of your Amended Complaint.

Response: My protected activity was first opposing the discriminatory instructions of Mr. Wunder and then pursing both an informal and a formal EEO complaint.

17.    State the basis for your allegation, in paragraph 55 of your Amended Complaint, that Mr. Campbell was aware of your pending EEO complaints.

Response: My earlier refusal to voluntarily curtail my position as Director of Cultural Programs and my subsequent involuntary curtailment in May/June 2002 had been discussed with and approved by the Director General's office in which Mr. Campbell works after a delay while my

10

EEO complaint was discussed with the office.

18. State whether you believe Ms. Jo Ellen Powell was aware of your EEO activity at the time that she proposed that you receive a two day suspension.

Response: I believe Ms. Powell was aware of my EEOC activity because her proposal of a 2-day suspension had to be discussed with and then approved by Mr. Campbell who had earlier approved my 6-day suspension and who I believe knew of my EEOC activity pursuant to Ms. Baldwin's prior discussions with his office.

19. Identify the "members of [your] staff" who you allege informed you that Mr. Wunder had been upset with Ms. Montgomery's performance as stated in paragraph 34 of your Amended Complaint.

Response: Lafaye Proctor and Deborah Chapman.

20. Identify each and every individual with whom you believe you are similarly situated for the purposes of your Amended Complaint.

Response: Objection, calls for a legal conclusion.

21. Describe each and every fact that you believe supports your allegations that you were discriminated against based on your gender (male).

Response: Mr. Wunder did not previously order any of the minorities and/or woman in the office to take discriminatory action against Ms. Montgomery.

22. Identify each and every person, other than any expert witness, who has, will or may submit any affidavits or other documentation to prove any issue relevant to your Amended Complaint. With respect to each, state the nature and substance of the affidavit or other documentation from the witness and the relationship, if any, of the witness to

11

you.

Response: Ms. Proctor and Ms. Chapman submitted affidavits describing the racial tensions in the Office of Cultural Programs during the administrative hearing of the claims. Plaintiff is without sufficient knowledge regarding whether additional affidavits or other documentation will be submitted by additional witnesses.

23. Identify each and every person, other than expert witnesses, whom you intend to call as a witness at the trial of this case. With respect to each, state the nature and substance of the testimony expected to be given and the relationship, if any, of the witness to you.

Response: Plaintiff has not decided which individuals will be called upon to testify at the trial.

24. Identify each and every expert witness you intend to call at trial and state his or her area of expertise and the substance of the facts and opinions to which each expert is expected to testify.

Response: Dr. Lin Bessett. Dr. Bessett is a Ph.D. clinical psychologist specializing in individual therapy involving abuse and harassment. I have been consulting with Dr. Bessett approximately every two weeks since March 2002. I have kept Dr. Bessett fully informed about the developments of my EEOC activity and complaint and the pain and suffering it has caused me up to this date.

25. List and identify each and every exhibit, attachment, or other document which relates to any issue in this case, stating with respect to each the: source, character (e.g., graph, flow chart, etc.), substance, date on which it was prepared, author, and recipient.

Response: Objection, overbroad and overburdensome. Notwithstanding objection, see

documents produced during administrative processing of EEO claims and subsequent EEOC administrative hearing.

                                      Respectfully submitted,

                                      */s/ Michelle L. Perry*
                                      Michelle L. Perry, Esq.
                                      D.C. BAR #468187
                                      KALIJARVI, CHUZI & NEWMAN, P.C.
                                      1901 L Street, N.W. Suite 610
                                      Washington, DC  20036
                                      Tel: (202) 331-9260
                                      FAX: (202) 331-9261

                                      Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing was served by Facsimile and Express Mail on August 27, 2007.

        SHEREASE LOUIS
        Special Assistant United States Attorney
        United States Attorney's Office
        Civil Division
        555 4th Street, N.W.
        Washington, D.C. 20530
        Fax: 202/514-8781

        _/s/ Michelle L. Perry_
        Michelle L. Perry