# EXHIBIT
# 43

1          <u>DECLARATION OF DEBORAH HUNSLEY</u>

2

3          In accordance with the provision of Title 28, United States Code, Section 1746,

4      I, Deborah Hunsley, make the following declaration to Betty L. Cox who has

5      identified herself to me as an EEO Investigator, Southwind Enterprises, Inc. assigned

6      by the US Department of State to perform this investigation, knowing that this

7      statement may be used in evidence.  I understand that this statement is not

8      confidential and may be shown to any party who must have access to this

9      information in order to carry out his or her official duties.

10          This statement is given in relation to a complaint of discrimination filed by

11      Matthew J. McGrath .

12          *I am aware that the accepted claims in this complaint are that because of his race*
13      *(Caucasian) and as reprisal for his having engaged in prior protected activity and/or for*
14      *opposing discriminatory practices, he was discriminated against and subjected to a hostile*
15      *work environment when:*
16
17      *a)      His supervisor attempted to undermine his authority as Chief, Division of Citizen*
18      *Exchanges, Office of Cultural Programs, Bureau of Educational and Cultural*
19      *Affairs;*
20
21      *b)      his supervisor gave him a negative performance evaluation as Chief, Division of*
22      *Citizen Exchanges, on 4/11/02 and 4/29/02;*
23
24      *c)      he was subjected to an involuntary curtailment of his assignment as Chief, Division*
25      *of Citizen Exchanges, Office of Cultural Programs, Bureau of Educational and*
26      *Cultural Affairs; and*
27
28      *d)      the discriminatory curtailment had the result of denying Complainant a career-*
29      *enhancing follow-on assignment.*
30
31      Q      Please state your full name.

32      A      Deborah Hunsley McGeehon                    Exhibit _13_

Initials ____                                               Page 1 of 9

| | | |
|---|---|---|
| 1 | Q | Please state your title and grade, the name of the agency by which you are |
| 2 | | employed, the organizational unit to which you are assigned, and the |
| 3 | | address of your duty station. |
| 4 | A | Foreign Service Officer, FSO 2; U.S. Department of State; ECA- |
| 5 | | IIP/EX/HR/OD – Organizational Development; State Annex 44, 301 4th |
| 6 | | Street SW, Washington, DC. |
| 7 | Q | Please state your organizational work relationship to Matthew McGrath at |
| 8 | | the present time. |
| 9 | A | none |
| 10 | Q | Please state your work relationship to Mr. McGrath at the time of the matters |
| 11 | | at issue in his complaint. |
| 12 | A | as Foreign Service Liaison officer for the Bureau of Educational and Cultural |
| 13 | | Affairs I administered his relationship with the Bureau as necessary |
| 14 | Q | Please state your work relationship to Van S. Wunder at the present time, |
| 15 | | and if different, at the time of the matters at issue in Mr. McGrath's |
| 16 | | complaint. |
| 17 | A | as Foreign Service Liaison officer for the Bureau of Educational and Cultural |
| 18 | | Affairs, I provide support as needed in recruiting and administering the relationship |
| 19 | | with FSO staff members |
| 20 | Q | Please state your race. |
| 21 | A | caucasian |
| 22 | Q | Have you previously participated in activities protected under Title VII of the |
| 23 | | Civil Rights Act of 1964, as amended, such as by protesting alleged |
| 24 | | discriminatory activities or by participating in any way in the EEO process? |
| 25 | A | no |
| 26 | Q | Are you aware of the Department of State's policy on harassment? Have you |
| 27 | | received training in that policy? |
| 28 | A | I have viewed the required video |

| | | |
|---|---|---|
| 1 | Q | Are you aware of how to raise concerns about harassment in order to have |
| 2 | | those concerns addressed? |
| 3 | A | I have access to persons and materials that would guide me if necessary |
| 4 | *a)* | *his supervisor attempted to undermine his authority as Chief, Division of* |
| 5 | | *Citizen Exchanges, Office of Cultural Programs, Bureau of Educational and* |
| 6 | | *Cultural Affairs* |
| 7 | Q | Mr. McGrath alleges that Mr. Wunder attempted to have him dismiss from |
| 8 | | employment Evangeline "EJ" Montgomery.  He contends Mr. Wunder told |
| 9 | | him to document problems in her performance with the view to using that |
| 10 | | information to terminate her employment.  Do you have any reason to |
| 11 | | believe Mr. Wunder was trying to pressure Mr. McGrath to document |
| 12 | | performance problems with Ms Montgomery in order to terminate her |
| 13 | | employment?  What leads you to the conclusion reached? |
| 14 | A | no |
| 15 | Q | Do you have any direct knowledge of the matter at issue in this claim?  If so, |
| 16 | | please describe your knowledge and explain how you come by it. |
| 17 | A | no |
| 18 | Q | Do you have any reason to believe that Mr. Wunder retaliated against Mr. |
| 19 | | McGrath because he refused to document performance problems and |
| 20 | | discharge Ms Montgomery from employment?  What leads you to the |
| 21 | | conclusion reached? |
| 22 | A | no |
| 23 | Q | Do you have any direct knowledge of whether or why Mr. McGrath's home |
| 24 | | leave while he was Division Chief was shortened from 25 work days to 20 |
| 25 | | work days?  If so, please describe your knowledge and explain how you |
| 26 | | come by it. |
| 27 | A | in the fall of 2001, Mr. Wunder sought my understanding of the regulations |
| 28 | | related to home leave when it became clear that a combination of Mr. |
| 29 | | McGrath's extended leave during the holiday season and his requested home |

| | | |
|---|---|---|
| 1 | | leave the next month would impair the functioning of the office. It is my |
| 2 | | recollection that, in early winter, when Mr. Wunder approved the home leave |
| 3 | | request, he understood that 25 days was the statutory minimum of home |
| 4 | | leave days.     Following Mr. McGrath's holiday leave, Mr. Wunder |
| 5 | | determined that the statutory minimum was 20 days and applied that to Mr. |
| 6 | | McGrath's upcoming leave. |
| 7 | Q | Did you observe any conduct on the part of Mr. Wunder toward Mr. |
| 8 | | McGrath that led you to conclude Mr. Wunder was biased against Mr. |
| 9 | | McGrath because of Mr. McGrath's race? If so, please describe the conduct |
| 10 | | and explain what led you to conclude Mr. Wunder held a racial bias against |
| 11 | | Mr. McGrath. |
| 12 | A | no |
| 13 | Q | Did you observe any conduct on Mr. Wunder's part that indicated to you he |
| 14 | | was trying to undermine Mr. McGrath's authority with his staff or over his |
| 15 | | division? If so, please describe the conduct and explain what led you to |
| 16 | | conclude Mr. Wunder was attempting to undermine Mr. McGrath's |
| 17 | | authority. |
| 18 | A | no |
| 19 | Q | Did you observe any conduct by Mr. Wunder that you interpreted as being |
| 20 | | intended to create a hostile work environment for Mr. McGrath? If so, please |
| 21 | | describe the conduct and explain what leads you to conclude this was |
| 22 | | intended to harass Mr. McGrath and cause a hostile work environment. |
| 23 | A | no |
| 24 | Q | Is there anything you would like to add to your statement about this claim? |
| 25 | A | in my work with Mr. Wunder, it was clear that he was struggling to develop |
| 26 | | Mr. McGrath's managerial and supervisory skills but was frustrated by Mr. |
| 27 | | McGrath's consistent refusal to communicate with him or follow his clear |
| 28 | | direction |

1       **b)**    *his supervisor gave him a negative performance evaluation as Chief,*

2               *Division of Citizen Exchanges, on 4/11/02 and 4/29/02;*

3       Q     Do you have any direct knowledge of the matters at issue in this claim?  If so,

4      please describe your knowledge and explain how you come by it.

5       A     as Foreign Service Liaison officer for the Bureau, I administer the EER

6      process.  As such I work closely with the panel of FSOs which reviews the EERs.

7      The panel returned Mr. McGrath's EER to him for revision, requiring him to remove

8      from his comments any reference to his EEO complaint (inadmissible under the EER

9      guidelines).  He was also counseled to revise his comments about the Rating Officer,

10     Mr. Wunder.

11     Q     Is there anything you would like to add to your statement on this claim?

12     A     when I provided the panel's comments to Mr. McGrath, he stated that since

13              his complaint comments were inadmissible, he would submit no comments

14              and sign the blank page.

15     **c)**    *he was subjected to an involuntary curtailment of his assignment as Chief,*

16             *Division of Citizen Exchanges, Office of Cultural Programs, Bureau of*

17             *Educational and Cultural Affairs*

18     Q     When and how did you become aware that Mr. McGrath's management

19              intended to curtail his assignment as division chief?

20     A     I had been aware of ECA/PE's unhappiness with Mr. McGrath's

21              performance for some months when, in early spring, Mr. Wunder suggested

22              to Mr. McGrath that he seek a curtailment from ECA.  During the contentious

23              EER period, it became clear that Mr. McGrath would not seek such a

24              curtailment.  On May 21, Mr. Wunder called me and asked that I attend a

25              meeting with Mr. McGrath and Deputy Assistant Secretary Stephen Hart to

26              be a witness as Mr. McGrath would be informed that he was to be

1    involuntarily curtailed.  Mr. McGrath was unavailable for this meeting before

2    May 23 at which point he was presented with the memo, and advised of his

3    right to seek a voluntary curtailment within 48 hours and provide written

4    comments to Director General Ruth Davis.   Mr. McGrath did not accept the

5    opportunity to voluntarily curtail and the involuntary curtailment was

6    effected.

7    Q    Were you given reasons for the desire to curtail Mr. McGrath's assignment?

8    If so, what were they?

9    A    refusal to communicate; refusal to accept and follow direction; poor

10    performance in his managerial, supervisory and project implementation

11    responsibilities.

12    Q    Did Mr. Wunder and/or Mr. Hart provide you any supporting evidence of

13    the concern about Mr. McGrath's performance or lack thereof in the role of

14    division chief?  If so, what was made available to you for your consideration?

15    A

16    Q    Did you have any role in deciding whether Mr. McGrath would in fact be

17    curtailed?  If so, what was your role?  Did you agree that it was appropriate

18    that Mr. McGrath's assignment be curtailed?

19    A    no

20    Q    What is the impact on an FSO's record if he or she is involuntarily curtailed

21    from an assignment?

22    A    generally, the impression left is negative

| | | |
|---|---|---|
| 1 | Q | What is the impact if the FSO voluntarily curtails from an assignment? |
| 2 | A | the impression left from voluntary curtailment generally varies depending |
| 3 | | upon the circumstances and the observer |
| 4 | Q | Was Mr. McGrath offered the opportunity to curtail? |
| 5 | A | yes, at two different times in this process |
| 6 | Q | What was Mr. McGrath's response? |
| 7 | A | he refused |
| 8 | Q | Is there anything you would like to add on this claim? |
| 9 | A | |
| 10 | *d)* | *the discriminatory curtailment had the result of denying Complainant a* |
| 11 | | *career-enhancing follow-on assignment.* |
| 12 | Q | If Mr. McGrath had not been involuntarily curtailed in this assignment, |
| 13 | | would he likely have been given a "career enhancing follow-on assignment?" |
| 14 | | Why? |
| 15 | A | not likely, as he would not have received a positive recommendation from |
| 16 | | ECA/PE |
| 17 | Q | Had Mr. McGrath chosen to voluntarily curtail, would that have enhanced |
| 18 | | his opportunity to receive a "career enhancing follow-on assignment?" |
| 19 | A | slightly |
| 20 | Q | Based on your understanding of the situation, do you perceive the |
| 21 | | curtailment to have been discriminatory and based on Mr. McGrath's race or |
| 22 | | his alleged protestation of Mr. Wunder's alleged intent to document EJ |
| 23 | | Montgomery's performance problems and terminate her employment |
| 24 | | because of her race? |
| 25 | A | no |
| 26 | Q | Is there anything you would like to add to your statement? |

1    A
2

1      I declare under penalty of perjury that the foregoing is true and correct.

2   Executed on this day, ____August  23____ , 2002

3

4   _____

5   Deborah Hunsley

6